UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BUKHARI DAING,

                    Plaintiff,

            -against-

BNP PARIBAS S.A.; UNITED ARAB EMIRATES;
GOVERNMENT OF FRANCE,

                    Defendants.

---

1:25-CV-9750 (LTS)

ORDER OF DISMISSAL
LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Bukhari Daing, of Omaha, Nebraska, who is appearing *pro se*, filed this action

seeking damages and other relief. He sues: (1) BNP Paribas S.A. ("BNP"); (2) the United Arab

Emirates ("UAE"); and (3) the "Government of France," which the Court understands to be the

French Republic (France). In addition to his complaint, Plaintiff has filed numerous other

submissions, including a "motion to file complaint and exhibits under seal" (ECF 3), a "motion

for emergency injunction" (ECF 7), a "motion for partial summary judgment and early individual

damages" (ECF 8), an "emergency motion for humanitarian aid and finding of liability" (ECF

12), an "emergency motion to expedite enforcement of Rule 55(b)(2) default judgment" (ECF

13), an "emergency motion for immediate asset seizure and direct disbursement to Plaintiff"

(ECF 14), a "Rule 55(a) motion for entry of default" (ECF 15), a "Rule 55(b)(2) motion for

default judgment" (ECF 16), a "motion to amend Rule 55(b)(2) default judgment request—

revised damages and humanitarian disbursement structure" (ECF 18), an "emergency Sudan trust

implementation immediate action plan" (ECF 19), a "motion to amend Rule 55(b)(2) default

judgment request updated damages amount: $51 billion" (ECF 20), a "motion to amend Rule

55(b)(2) default judgment request updated damages amount: $88 billion" (ECF 21), a "motion

for leave to conduct post-judgment discovery under Rule 69(a)(2)" (ECF 22), a "notice regarding

pending Rule 55(a) entry" (ECF 23), and a "supplemental sealed statement of sum certain" (ECF 24).

Liberally construing all of these submissions, Plaintiff seems to assert claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350; the Trafficking Victims Protection Act of 1991 ("TVPA"), 28 U.S.C. § 1350 (West); and civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.

The Court understands Plaintiff's "motion to file complaint and exhibits under seal" (ECF 3) as a motion to seal this action or, alternatively, as a motion to proceed anonymously.[1] The Court also understands Plaintiff's "motion for emergency injunction" (ECF 7) as an application for an order to show cause for a temporary restraining order and a preliminary injunction in which Plaintiff asks this Court to "freeze" all of the American-located assets of the defendants, to restrict the transfer and withdrawals of those assets, to enjoin any retaliation against Plaintiff or members of his family, and to recognize Plaintiff's standing to bring this action. The Court further construes these submissions and Plaintiff's other abovementioned submissions filed after his complaint as supplements to his complaint.[2]

---

[1] Before the entry of this order, in an abundance of caution, and pending a ruling on Plaintiff's "motion to seal," the Clerk of Court had restricted access to all of the submissions filed in this action to a "case participant-only" basis.

[2] Plaintiff has most recently filed, on March 3, 2026, in the United States Court of Appeals for the Second Circuit, a "petition for writ of mandamus" in which he asks that the Clerk of Court be directed to: "[1] enter default [judgment] under Rule 55(a) based on the defendants' failure to plead or otherwise defend; and [2] . . . process [his] Rule 55(b)(1) affidavit of sum certain as required once default has been entered." (ECF 25, at 1) (Court of Appeals docket number 26-476).

The Court notes that no summonses have issued in this action, therefore, Plaintiff has not served the defendants and, thus, default judgment would appear to be improper at this stage of the litigation. The Court will not act on this submission, however, as it is seeking relief from the Second Circuit and not this court.

By order dated December 9, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons discussed in this order, the Court dismisses this action and denies all of Plaintiff's motions and other requests for relief. The Court, however, grants Plaintiff leave to replead his claims against BNP in an amended complaint, as specified below.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

## BACKGROUND

The following facts are drawn from Plaintiff's complaint and from the submissions that the Court has deemed to be supplements to Plaintiff's complaint.[3] Plaintiff alleges that he was born in Sudan and resided there during attacks perpetrated by the Rapid Support Forces ("RSF") (ECF 1, at 9), which he describes as "a Sudanese paramilitary . . . group that evolved from the 'Janjaweed' militias used by [former President of Sudan] Omar al-Bashir . . . during the Darfur

---

[3] The Court quotes from these submissions verbatim. All spelling, grammar, and punctuation are as in the original submissions unless noted otherwise.

genocide" (*id.* at 4). The RSF is "internationally recognized as a genocidal force responsible for systematic mass killings, ethnic cleansing, torture, rape, village burnings, complete village genocides, and crimes against humanity."[4] (*Id.*) In 2017, "[t]he RSF became an official arm of the Sudanese government . . . and continues to commit atrocities across Sudan." (*Id.*) Plaintiff was able to flee Sudan with his mother, father, and three younger sisters to the United States of America, specifically, to Omaha, Nebraska. (*Id.* at 9.) Plaintiff has since become an American citizen. (*Id.*)

Plaintiff's uncle, however, was killed in Sudan by the RSF. (*Id.*) Plaintiff's uncle's immediate family have "faced immense difficulties[] and [post-traumatic stress disorder ("PTSD")]." (*Id.*) Plaintiff's mother has supported them financially since Plaintiff's uncle was killed. (*Id.*)

Members of Plaintiff's extended family who were living in Cairo, Egypt, traveled to Sudan to mourn Plaintiff's uncle's death. (*Id.*) During their return to Cairo, they brought other members of Plaintiff's extended family from Khartoum, Sudan, to Cairo. (*Id.*) When they attempted to cross the Egyptian-Sudanese border and travel into Egypt, however, they became "trapped at the . . . border checkpoint in desert conditions (starvation, dehydration) because Egypt was saying there were tourists nearby and refused to budge. [Plaintiff's family members] could have been stuck for weeks." (*Id.*) Plaintiff attributes that situation to BNP's "negligence." (*Id.*) Plaintiff's extended family members "were at risk of being extorted, detained, shot, or returned to war, or" there was the potential for Plaintiff's female family members to be "exploited." (*Id.*)

---

[4] "Plaintiff . . . endured life-threatening conditions while fleeing RSF-controlled Khartoum [(Sudan)], where indiscriminate civilian killings occurred mere doors away." (ECF 8, at 2.)

Upon his being informed of those events, Plaintiff, in the United States, "could not sleep for days; [he] suffered extreme emotional trauma and [his] eyes were red from the stress of having to save them." (*Id.*) He then "exhausted all the options available to [him] [by] contacting all the embassies, consulates, [the United Nations], [the] Red Crescent, parts of USA.gov, and the only thing that worked" was when he was able to communicate with the Office of Congressman Don Bacon. (*Id.*) Plaintiff "filed a highly precise congressional request to save" the members of his family that were at the abovementioned border crossing. (*Id.*) "Through this pressure, [Plaintiff's] family [members] escaped. . . . It seems that the congressional request made the [Egyptian border] guards more lax. . . ." (*Id.*)

Plaintiff's family members then got onto a train to Cairo, but Egyptian soldiers on the train extorted "hundreds of dollars" from them, "even though they already paid all the train fees." (*Id.* at 10.) "Egyptian soldiers are turning predatory because BNP helped cause the total collapse of Sudan, flooding Egypt with traumatized, undocumented civilians." (*Id.*)

Plaintiff currently financially supports members of his family that are now located in Cairo. (*Id.*) He suffers from "constant ongoing PTSD, fear of RSF expansion to . . . destabilize Cairo, Egypt, and constant pressure to protect [his] family." (*Id.*) Plaintiff also suffers from "shakiness, insomnia, weight loss, lack of appetite, [and the] inability to enjoy anything unless [he] resolve[s] this because [he is] basically the only one who can, hypervigilance, premature survivors['] guilt, racing heart, and depression." (*Id.*)

Plaintiff states that BNP "was the ONLY major international bank that knowingly ignored U.S. sanctions and continued doing massive, deliberate business with Sudan's genocidal regime." (*Id.* at 7.) BNP "made itself the EXCLUSIVE BANK for Sudan's regime." (*Id.*) It "didn't just ignore sanctions—[it] built a whole system to launder money to Sudan, using hidden

accounts and fake transactions." (*Id.*) "The RSF's very existence was the result of a system BNP funded long before others joined in." (*Id.* at 8.) Plaintiff states that, "[w]ithout BNP, the Janjaweed (which later became [the] RSF) would have collapsed financially or stayed a low-level militia." (*Id.*)

Plaintiff states that the "UAE is actively funding, supplying, and supporting the RSF." (*Id.* at 2.) "This renders the UAE complicit not only in sustaining the genocide—but in obstructing humanitarian corridors, peace negotiations, and recovery for TENS OF MILLIONS OF PEOPLE!"[5] (*Id.*) In addition, Plaintiff asserts that "France recently executed a €21 billion weapons deal with the UAE, even while knowing . . . [that] [t]he UAE is arming [the] RSF in a live genocide" and that BNP "—France's largest bank—was under investigation (and later convicted) for enabling genocidal transactions." (*Id.*) "There is strong reason to believe BNP served as a conduit for financing and clearing these weapons deals, extending from 2015 to 2024, despite internal and international warnings." (*Id.* at 3.)

BNP's and France's actions "were not neutral diplomacy or trade. They represent negligent, knowing contributions to an unfolding genocide—and directly fueled the harm suffered by Sudanese civilians, including [Plaintiff] and [his] extended family." (*Id.*) "In 2014, when BNP was fined $8.9 billion for illegal Sudan transactions, French leaders . . . lobbied the U.S. government to reduce penalties, framing BNP's actions as excusable. This diplomatic shielding continues to this day, especially as BNP structures or profits from France's €21 billion weapons trade with the UAE. . . ." (*Id.*)

---

[5] Plaintiff alleges that the "UAE has reportedly ordered for drone strikes to be launched into the last remaining stable regions of Sudan, targeting national infrastructure." (ECF 21, at 1.)

In his "motion to file complaint and exhibits under seal," Plaintiff requests that:

> Given the nature of the Sudan genocide, the continuing violence by RSF-affiliated actors, the involvement of foreign financial institutions, and the risk of retaliation against [his] family inside Cairo . . . and Sudan, . . . that this case and all accompanying exhibits be filed under seal to protect the safety of the parties and witnesses.

(ECF 3, at 1.)

In his "motion for emergency injunction," Plaintiff asks this Court to "freeze" the American assets of BNP, of UAE's "Central Bank and sovereign wealth funds," and of "[i]dentified UAE proxies funding [the] RSF or other armed groups." (ECF 7, at 2.) He also asks this Court to "[r]estrict asset transfers or withdrawals by the above parties during this proceeding," to "[p]revent retaliation against Plaintiff or his family, including gag orders or protective measures," and to "[r]ecognize . . . Plaintiff's standing based on direct victimhood and Congressional recognition." (*Id.*)

In his complaint, Plaintiff seeks "personal damages" for "trauma [and] PTSD," "fear of death," "heroic action trauma," an "evidence [and] documentation burden," and "economic pressure." (*Id.* at 18.) He also seeks "immediate family damages" for, among other things, "loss of life," "loss of income," and "child PTSD." (*Id.* at 19-21.) Plaintiff further seeks damages for a "Sudanese Civilians Trust." (*Id.* at 25-27.) He asks that this Court recognize him as his family members' "lawful educator and representative" and that "rescue . . . from their predicament . . . [gave] them sufficient standing" to bring this action. (ECF 16, at 2.)

## DISCUSSION

### A.    Motion to seal or to proceed anonymously

#### 1.    Motion to seal

The Court must deny Plaintiff's motion, inasmuch as Plaintiff seeks to have this action sealed. Both the common law and the First Amendment protect the public's right of access to

court documents. *See Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 597-99 (1978); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91-92 (2d Cir. 2004). This right of access is not absolute, and "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599 (footnote omitted).

The United States Court of Appeals for the Second Circuit has set forth a three-part analysis to determine whether, under the common law, a document relating to a lawsuit should be made available to the public. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 119-20 (2d Cir. 2006). First, the Court must determine whether the document at issue is indeed a "judicial document," to which the public has a presumptive right of access. *Id.* at 119. Judicial documents are those that are "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (internal quotation marks and citation omitted).

Second, if the Court determines that the material to be sealed is a judicial document, then the Court must determine the weight of the presumption of access. *Id.* "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995).

Finally, "the court must balance competing considerations against" the presumption of access. *Lugosch*, 435 F.3d at 120 (internal quotation marks and citation omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure."[6] *Id.* (internal quotation

---

[6] As to the relevant First Amendment analysis, there are two different approaches. The first is "the so-called 'experience and logic' approach[,] [which] requires the court to consider both whether the documents 'have historically been open to the press and general public' and

8

marks and citation omitted). If the information at issue has already been made publicly available, such availability weighs against restricting public access to it. *See United States v. Basciano*, Nos. 03-CR-0929, 05-CR-0060, 2010 WL 1685810, at *3-4 (E.D.N.Y. Apr. 23, 2010) (privacy interest in sealing documents was weakened by the fact that the public was already aware of the relevant information); *see also Moroughan v. Cnty. of Suffolk*, No. 12-CV-0512, 2021 WL 280053, at *4 (E.D.N.Y. Jan. 24, 2021) ("[G]iven the critical nature of those issues in this litigation and their presence in other public documents, it is the Court's view that the public has a strong interest in access to *all the evidence* surrounding those issues in the Court's Opinion in order to allow the public to make their own assessment of the parties' summary judgment arguments and the Court's decision."); *United States v. Cohen*, No. 18-CR-0602 (WHP), 2019 WL 3226988, at *1 (S.D.N.Y. July 17, 2019) ("[T]he involvement of most of the relevant third-party actors is now public knowledge, undercutting the need for continued secrecy."); *United States v. Key*, No. 98-CR-0446, 2010 WL 3724358, at *3 (E.D.N.Y. Sept. 15, 2010) ("[Defendant] offers no evidence that sealing now what has long been in the public record will prevent some enhanced risk of substantial prejudice to his or his family's safety.").

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such an action." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). Pleadings, which include the document that initiates a civil suit (a complaint), *see*

---

whether 'public access plays a significant positive role in the functioning of the particular process in question." *Lugosch*, 435 F.3d at 120 (citations omitted). The Second Circuit has noted that "[t]he courts that have undertaken this type of inquiry have generally invoked the common law right of access to judicial documents in support of finding a history of openness." *Id.* (citation and internal quotation marks omitted). As to the second approach, courts "consider[] the extent to which the judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings.'" *Id.* (citation and footnote omitted). Here, because the common law right of access requires the Court to deny Plaintiff's motion to seal this action, there is no need to discuss these approaches to First Amendment analysis.

Fed. R. Civ. P. 3, 7(a)(1), are considered judicial documents for the purpose of this analysis, *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 140 (2d Cir. 2016).

Plaintiff's complaint and, by extension, the supplements to his complaint are judicial documents, and are, therefore, entitled to a strong presumption of public access. Thus, other than what Plaintiff generally characterizes in his motion to seal as "the risk of retaliation against [his] family inside Cairo, Egypt[,] and [in] Sudan" (ECF 3), there do not appear to be countervailing factors that support sealing any of Plaintiff's submissions filed in this action. In addition, given the facts alleged and what has been publicly reported about the situation in Sudan, there is nothing to suggest that sealing any submission filed in this action "will prevent some enhanced risk of substantial prejudice to . . . [Plaintiff's] family's safety." *Key*, 2010 WL 3724358, at *3.[7] The Court therefore denies Plaintiff's motion, inasmuch as Plaintiff seeks to have this action sealed.

### 2.      Motion to proceed anonymously

To the extent that Plaintiff alternatively seeks to proceed anonymously, the Court must also deny Plaintiff's motion. Rule 10(a) of the Federal Rules of Civil Procedure provides that "[t]he title of [a] complaint must name all the parties." Fed. R. Civ. P. 10(a). "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008). Courts have, however, permitted a party to proceed anonymously in a limited number of circumstances. The Second Circuit has articulated the

---

[7] Plaintiff's own submissions demonstrate that the RSF's atrocities and Defendants' financial support of the RSF are publicly known, as is the displacement of Sudanese civilians into Egypt. (*See, e.g.*, ECF 1.)

following nonexhaustive list of ten factors that a court should consider when deciding whether to

permit a party to proceed under a pseudonym or anonymously:

> (1) whether the litigation involves matters that are highly sensitive and of a
> personal nature; (2) whether identification poses a risk of retaliatory physical or
> mental harm to the party seeking to proceed anonymously or even more critically,
> to innocent non parties; (3) whether identification presents other harms and the
> likely severity of those harms, including whether the injury litigated against
> would be incurred as a result of the disclosure of plaintiff's identity; (4) whether
> the plaintiff is particularly vulnerable to the possible harms of disclosure,
> particularly in light of his age; (5) whether the suit is challenging the actions of
> the government or that of private parties; (6) whether the defendant is prejudiced
> by allowing the plaintiff to press his claims anonymously, whether the nature of
> that prejudice (if any) differs at any particular stage of the litigation, and whether
> any prejudice can be mitigated by the district court; (7) whether the plaintiff's
> identity has thus far been kept confidential; (8) whether the public's interest in the
> litigation is furthered by requiring the plaintiff to disclose his identity;
> (9) whether, because of the purely legal nature of the issues presented or
> otherwise, there is an atypically weak public interest in knowing the litigants'
> identities; and (10) whether there are any alternative mechanisms for protecting
> the confidentiality of the plaintiff.

*Id.* at 189-90 (alterations, ellipses, quotation marks, and citations omitted). "[T]his factor-driven

balancing inquiry requires a district court to exercise its discretion in the course of weighing

competing interests. . . ." *Id.* at 190. (citation omitted).

Among the abovementioned factors most salient to the analysis here are:

> (2) whether identification poses a risk of retaliatory physical or mental harm to
> the party seeking to proceed anonymously or even more critically, to innocent non
> parties; (3) whether identification presents other harms and the likely severity of
> those harms, including whether the injury litigated against would be incurred as a
> result of the disclosure of plaintiff's identity; . . . (7) whether the plaintiff's
> identity has thus far been kept confidential.

*Id.* at 189-90.

The Court first recognizes that, while Plaintiff's anonymity or sealing motion has been

pending, in an abundance of caution, the Clerk of Court has restricted electronic access to all of

the submissions filed in this action to a "case-participant only" basis. Plaintiff's full name,

mailing address, telephone number, and email address, as well as the identities of the named

defendants, however, have remained publicly available on the court's electronic docket of this action. Thus, with respect to considering whether Plaintiff's identity has thus far been kept confidential, such abovementioned circumstances weigh against allowing Plaintiff to proceed anonymously. *See Doe v. Skyline Automobiles, Inc*, 375 F. Supp. 3d 401, 407 (S.D.N.Y. 2019) (Carter, D.J.) ("Some courts have indicated that if the identity of a plaintiff was previously disclosed in judicial or administrative proceedings, then the request to proceed anonymously should be denied."); *Doe v. Nat'l Conf. of Bar. Exam'rs*, No. 1:16-CV-0264, 2017 WL 74715, at *3 (E.D.N.Y. Jan. 6, 2017) ("Plaintiff's argument that she must maintain anonymity because *Defendants* could retaliate against her is belied by the fact that she has already publicly disclosed her identity during the course of this litigation.").

Plaintiff, in his complaint, identifies the harm he alleges that he, his extended family members, and other Sudanese citizens have suffered or will possibly suffer. (ECF 1, at 18-23, 25-27.) He seems to most specifically address, in his anonymity or sealing motion, the risk of retaliatory physical or mental harm to him and/or to other non-parties, especially to members of his extended family and to other Sudanese citizens, and whether these harms would be more severe if he were to proceed under his true name. He states in his motion:

> Given the nature of the Sudan genocide, the continuing violence by RSF-affiliated actors, the involvement of foreign financial institutions, and the risk of retaliation against my family inside Cairo, Egypt[,] and [in] Sudan, I respectfully request that this case and all accompanying exhibits be filed under seal to protect the safety of the parties and witnesses.

(ECF 3, at 1.) These concerns are speculative and based on generalized harm; they therefore are insufficient to support the granting of a motion to proceed anonymously. *See Doe v. Combs*, No. 1:24-CV-8810 (LAK), 2025 WL 268515, at *3 (S.D.N.Y. Jan. 22, 2025) ("'[G]eneralized harm, absent more direct evidence linking disclosure of [the plaintiff's] name to a specific physical or

mental injury, is insufficient.' . . . [A] plaintiff must articulate more than 'speculative risks of harm' to proceed anonymously." (citations and footnotes omitted)).

Accordingly, and because none of the other abovementioned factors weigh in favor of allowing Plaintiff to proceed anonymously, the Court denies Plaintiff's motion insofar as Plaintiff seeks to proceed anonymously.

The Court therefore directs the Clerk of Court to lift all electronic access restrictions that have been applied to the submissions filed in this action.

**B.    Plaintiff's claims brought on behalf of his family members and others**

The Court must dismiss all of Plaintiff's claims that he asserts on behalf of other individuals, including members of his family and other Sudanese citizens. The statutory provision governing appearances in federal court, 28 U.S.C. § 1654, allows two types of representation: "that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself." *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (internal quotation marks and citation omitted). "[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). This includes claims brought *pro se* under the ATS, the TVPA, or RICO. *See Tonner v. FirstService Corp.*, No. 1:24-CV-6913 (KMW), 2025 WL 1883607, at *2 (S.D.N.Y. July 2, 2025) (civil RICO); *McCarthy v. Kaplan*, No. 24-CV-3286, 2024 WL 2862374, at *3 (E.D.N.Y. June 6, 2024) (TVPA); *Sikhs for Justice v. Mann*, No. 1:23-CV-2578 (AT), 2023 WL 2876736, at *1-2 (S.D.N.Y. Apr. 10, 2023) (ATS and TVPA).

Plaintiff has not alleged any facts suggesting that he is an attorney. The Court therefore dismisses without prejudice Plaintiff's claims that he brings on behalf of other individuals, including members of his family and other Sudanese citizens.

13

The Court understands Plaintiff's own remaining claims as arising from events that occurred within two time frames: (1) when Plaintiff was still living in Sudan, before he became an American citizen, and was subject to the actions of the RSF, and (2) after Plaintiff arrived in the United States of America, became an American citizen, and learned of the plight of his extended family members located in Sudan and in Egypt.

**C.    Foreign Sovereign Immunities Act and 28 U.S.C. § 1605A**

Plaintiff's own claims against the French Republic (France) and the UAE are foreclosed by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602, *et seq.* "The FSIA provides the exclusive basis for obtaining subject matter jurisdiction over a foreign state" in a civil action. *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 122 (2d Cir. 2016) (citing 28 U.S.C. § 1604 and *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989)), *abrogated on other grounds*, *Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018); *see Turkiye Hal Bankasi A.S. v. United States*, 598 U.S. 264, 278 (2023) ("[T]he FSIA displaces general 'grants of subject-matter jurisdiction in Title 28' – that is, in *civil* cases against foreign states."); *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 133 (2d Cir. 2022) ("The FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." (internal quotation marks and citations omitted)). The FSIA renders a foreign state "presumptively immune from the jurisdiction of United States courts unless one of the Act's express exceptions to sovereign immunity applies." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 31 (2015) (internal quotation marks and citation omitted); *see* § 1604 ("Subject to existing international agreements to which the United States is a party at the time of enactment of this Act[,] a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in [28 U.S.C. §§ 1605 to 1607].").

"One exception [to FSIA immunity] allows parties to sue foreign state sponsors of terrorism for damages for claims arising out of acts of terrorism." *Levinson v. Kuwait Fin. Hous. (Malaysia) Berhad*, 44 F.4th 91, 93 (2d Cir. 2022) (citing 28 U.S.C. § 1605A(a)); *see* § 1605A(a)(1) ("Section 1605A") ("A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.").

Under the exception found at Section 1605A, FSIA immunity does not apply if, as pertinent here, the foreign state is designated as a state sponsor of terrorism, was so designated as a result of such act, and either remains so when the claim is filed or was so designated within six months before the claim is filed. § 1605A(2)(A)(i)(I). The claimant or victim must be either: (1) a national of the United States; (2) a member of the United States armed forces; or (3) either a federal government employee or an individual performing a contract awarded by the federal government, either one acting within the scope of that individual's employment. § 1605A(2)(A)(ii).

To the extent that Plaintiff sues the French Republic (France) and the UAE, including for damages under the Section 1605A exception to FSIA immunity, such claims are precluded by that immunity. Both France and the UAE are foreign states. *See* 28 U.S.C. § 1603(a). The Court takes judicial notice, however, of the fact that neither France nor the UAE have ever been listed as a state sponsor of terrorism. *See* United States Department of State, Bureau of

Counterterrorism, State Sponsors of Terrorism, https://www.state.gov/state-sponsors-of-terrorism; https://perma.cc/4N4Z-ZHG7 (last visited Mar. 5, 2026); *see also Perez v. Ahlstrom Corp.*, No. 10-CV-1299, 2011 WL 2533801, at *2 (D. Conn. June 27, 2011) ("[T]he Court may . . . properly consider 'matters of which judicial notice may be taken,' including information on an official government website." (citations omitted)). The Court therefore dismisses Plaintiff's own claims against the French Republic (France) and the UAE for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), and for seeking monetary relief from defendants that are immune from such relief, *see* 28 U.S.C. § 1915(e)(2)(B)(iii).

**D.      Claims under the ATS against BNP arising from violations that occurred after Plaintiff became an American citizen**

The Court must dismiss Plaintiff's own claims against BNP under the ATS arising from violations that occurred after he became an American citizen. Under the ATS, "[t]he [federal] district courts shall have original jurisdiction of any civil action by *an alien* for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350 (emphasis added). The ATS "gives federal courts jurisdiction to hear certain civil actions filed *by aliens*." *Nestlé USA, Inc. v. John Doe*, 593 U.S. 628, 630 (2021). Thus, "only aliens may bring suit under the ATS." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 619 (S.D.N.Y. 2012) (Sweet, D.J.); *see Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 116 (2d Cir. 2010) (citing *Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980)), *aff'd*, 569 U.S. 108 (2013). The ATS is a "jurisdictional statute [that] does not create a cause of action." *Nestlé USA, Inc.*, 593 U.S. at 631.

Plaintiff alleges that he was born in Sudan and has become an American citizen. (ECF 1, at 9.) The Court, therefore, lacks jurisdiction to consider any of Plaintiff's own claims under the

ATS for violations that occurred while he has been an American citizen.[8] Accordingly, the Court dismisses such claims for lack of subject matter jurisdiction.[9] *See* Fed. R. Civ. P. 12(h)(3).

**E.     Standing to sue BNP**

The Court must dismiss Plaintiff's own remaining claims against BNP under the ATS, the TVPA, and under RICO for lack of standing. "Article III, Section 2, of the Constitution limits the jurisdiction of the federal courts to the resolution of cases and controversies." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citation and internal quotation marks omitted). "Standing to sue or defend is an aspect of the case-or-controversy requirement." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997).

To demonstrate standing, a litigant must show that: (1) he has personally suffered some actual or threatened injury as a result of his opponent's alleged illegal conduct; (2) the injury is fairly traceable to his opponent's conduct; and (3) the injury is likely to be redressed by the requested relief. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). The Supreme Court of the United States has made clear that, as to standing, "the [litigant] must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). In addition, to show standing, the litigant must demonstrate "a causal connection between the injury and the conduct complained of—the injury

---

[8] It is unclear when Plaintiff became an American citizen.

[9] The Second Circuit has previously assumed, without deciding, that a federal district court has jurisdiction to consider a claim under the ATS brought by an American citizen arising from alleged violations that occurred before that person became an American citizen. *See Mastafa v. Chevron Corp.*, 770 F.3d 170, 175 n.1 (2d Cir. 2014). The Court does not consider any such claims here, at this time, because Plaintiff appears to lack standing to bring such claims. *See infra* at 17-19.

has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result

[of] the independent action of some third party not before the court." *Id.* (internal quotation

marks and citation omitted). Finally, "it must be likely, as opposed to merely speculative, that the

injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks and

citation omitted). The burden of establishing standing to sue rests with the party bringing the

action. *Id.*

> Moreover:
>
> a generalized grievance, no matter how sincere, is insufficient to confer standing.
> A litigant raising only a generally available grievance . . .—claiming only harm to
> his and every citizen's interest in proper application of the Constitution and the
> laws, and seeking relief that no more directly and tangibly benefits him than it
> does the public at large—does not state an Article III case or controversy.

*Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (internal quotation marks and citation

omitted). In short, standing requires a litigant to have "a personal stake in the outcome of the

controversy as to assure that concrete adverseness which sharpens the presentation of issues."

*Baker v. Carr*, 369 U.S. 186, 204 (1962). "[S]tanding to sue may not be predicated upon an

interest of the kind . . . [that] is held in common by all members of the public, because of the

necessarily abstract nature of the injury all citizens share." *Schlesinger v. Reservists Comm. to*

*Stop the War*, 418 U.S. 208, 220 (1974). A plaintiff lacks standing to sue if the injuries that he

"suffers in some indefinite way [are] in common with people generally." *DaimlerChrysler Corp.*

*v. Cuno*, 547 U.S. 332, 344 (2006) (internal quotation marks and citation omitted).

Most of Plaintiff's own claims arise from injuries that other individuals, including

members of his family and Sudanese citizens at large, allegedly suffered or will suffer at the

hands of the RSF, Sudanese officials, or Egyptian officials, and are not directly tied to actions by

BNP. In addition, Plaintiff's submissions are not clear as to whether he himself has suffered or

will suffer any injury-in-fact—one that is "an invasion of a legally protected interest which is

(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," *Lujan*, 504 U.S. at 560—that is fairly traceable *to BNP's direct conduct with him* (as opposed to any direct conduct of "third-parties" and non-defendants Sudan and/or the RSF), and that the relief he seeks will address that injury-in-fact, *see id.* The Court, therefore, dismisses Plaintiff's claims against BNP for lack of subject matter jurisdiction, because Plaintiff lacks standing to sue BNP. *See* Fed. R. Civ. P. 12(h)(3); *Mahon*, 683 F.3d at 62. The Court, however, grants Plaintiff leave to replead, in an amended complaint, those claims against BNP for which he can allege facts showing that he himself has suffered or will imminently suffer an injury-in-fact that is fairly traceable to the alleged actions of BNP. Plaintiff must also allege facts showing that *there is a direct causal connection between BNP's conduct and his already suffered or imminent injuries*, and that the relief he seeks in his amended complaint would be able to redress that injury.[10]

## F.    Motion for a preliminary injunction and other requests for immediate injunctive relief

The Court must deny Plaintiff's motion for a preliminary injunction and Plaintiff's other requests for immediate injunctive relief because of the deficiencies discussed above. To obtain immediate injunctive relief, such as the relief sought in Plaintiff's motion for a preliminary injunction and in his other requests for immediate injunctive relief, a plaintiff must show: (1) that he is likely to suffer irreparable harm and (2) either (a) a likelihood of success on the merits of his action or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. *See UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000); *Dennis v. K&L Gates LLP*, No.

---

[10] This includes any claims brought under the ATS arising from events that took place before Plaintiff became an American citizen.

1:20-CV-9393 (MKV), 2025 WL 902457, at *2 (S.D.N.Y. Mar. 25, 2025) (quoting

*MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004)). Such relief "is

an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear

showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d

506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

Because of the abovementioned deficiencies, neither Plaintiff's complaint, his motion for

preliminary injunction, nor any of his other submissions demonstrate: (1) a likelihood of success

on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground

for litigation and a balance of hardships tipping decidedly in Plaintiff's favor. Accordingly, the

Court denies Plaintiff's motion for a preliminary injunction and all of his other requests for

immediate injunctive relief. This denial is without prejudice to Plaintiff's making such claims for

relief in an amended complaint in which he alleges facts sufficient to show that he has standing

to sue BNP.

## G.    Leave to amend is granted

Plaintiff proceeds in this matter without the benefit of an attorney. District courts

generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its

defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir.

2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has

cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to

amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v.

USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege

additional facts to show that he has standing to sue BNP, the Court grants Plaintiff 30 days' leave

20

to file an amended complaint in which he names BNP as a defendant and alleges facts showing that he has standing to sue BNP.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this action.

## CONCLUSION

The Court dismisses this action for the reasons set forth in this order. The Court construes Plaintiff's motion to seal this action as a motion to seal this action and, alternatively, as a motion to proceed anonymously, and the Court denies the motion in its entirety. (ECF 3.) The Court therefore directs the Clerk of Court to lift all electronic access restrictions on the submissions filed in this action.

The Court also denies Plaintiff's motion for a preliminary injunction (ECF 7) and all other motions and requests for immediate injunctive relief. Because Plaintiff's remaining motions and requests are procedurally improper, and because of the deficiencies discussed above, the Court further denies all of Plaintiff's other pending motions and requests, including any for default judgment and for partial summary judgment. (ECF 8, 12-16, 18, 20-22.)

The Court additionally directs the Clerk of Court to terminate the French Republic and the United Arab Emirates from this action. The Court, however, grants Plaintiff 30 days' leave to file an amended complaint in which he alleges facts showing that he has standing to sue BNP Paribas S.A.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:     March 6, 2026
           New York, New York

                                    /s/ Laura Taylor Swain
                                    LAURA TAYLOR SWAIN
                                    Chief United States District Judge